**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     UNIVERSAL MARKETING, INC., | : | |
| | : | |
|             Debtor. | : | Bky.  No. 09-15404 ELF |
| | : | |
| | : | |
| CHARLES R. GOLDSTEIN, Chapter 7 Trustee | : | |
| for the Estate of Universal Marketing, Inc., <u>et al.</u>, | : | |
| | : | |
|           Plaintiff, | : | |
| | : | |
|      v. | : | |
| | : | |
| BRT, INC., | : | |
| | : | |
|          Defendant. | : | Adv.  No.  11-0569 |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

On July 21, 2011, Plaintiff Charles R. Goldstein ("the Trustee"), the chapter 7 trustee in

the bankruptcy case of Universal Marketing, Inc. ("the Debtor")[1] filed a Complaint against

Defendant BRT, Inc. ("BRT" or "Defendant"), seeking to avoid certain pre-petition transfers

---

[1]     The bankruptcy estate of Debtor Universal Marketing, Inc. has been substantively consolidated with the estates of the following entities: (i) Universal Marketing, Inc.; (ii) Universal Delaware, Inc.; (iii) Universal Enterprises, Inc.; (iv) Universal Management, Inc.; (v) Universal Distribution Inc.; and (vi) Project Growth Technologies, Inc.

Throughout the Complaint, the Trustee uses the term "the Debtors," referring to the Debtor and the non-debtor entities whose estates have been substantively consolidated with the bankruptcy estate.  I will use the term "Debtor" to refer to Universal Marketing, Inc. and the term "Debtors" to refer to the Debtor <u>and</u> the entities that have been consolidated with the bankruptcy estate.

allegedly made by the Debtors to BRT.[2]

In the Complaint, the Trustee asserts that certain transfers of property:

- made within ninety (90) days prior to the date the Debtor filed the bankruptcy petition ("the Petition Date") may be avoided as preferences under 11 U.S.C. §547;

- made within two (2) years of the Petition Date may be avoided as fraudulent transfers under 11 U.S.C. §548;

- made within four (4) years of the Petition Date may be avoided as fraudulent transfers under 11 U.S.C. §544;

- made after the Petition Date were unauthorized and may be avoided under 11 U.S.C. §549.[3]

The Complaint also includes counts under 11 U.S.C. §502(d) and (j) (for disallowance of BRT's proof of claim) and §550 (for recovery of the avoided transfers).  Finally, without citation of any statutory authority, the Complaint also includes a count requesting an award of attorney's fees and costs.

Presently before the court is BRT's Motion to Dismiss the Complaint ("the Motion"), filed on September 27, 2011, pursuant to Fed. R. Civ. P. 12(b)(6).[4]  BRT's core argument is that "[t]he Complaint contains little more than generic allegations and legal conclusions, which

---

[2]      I note that on July 21 and 22, 2011, the Trustee filed 180 adversary complaints.  The Complaints were all substantially similar to the Complaint in this proceeding.

[3]      The amount of the transfers at issue in this adversary proceeding are:

| | |
|---|---|
| Ninety (90) Day Transfers | $     98,858.48 |
| Two (2) Year Transfers | $ 1,418,341.97 |
| Four (4) Year Transfers | $ 2,157,413.85 |

[4]      Fed. R. Civ. P. 12 is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

. . . are insufficient to survive a motion to dismiss." (BRT Mem. of Law at 1).

For the reasons explained below, the Motion will be granted in part and denied in part. I will dismiss the fraudulent transfer claims. I will deny the Motion in all other respects, including the request that the dismissal of the fraudulent transfer claims be with prejudice and I will grant the Trustee twenty-one (21) days to file an Amended Complaint. Finally, I will further consider, sua sponte, the legal sufficiency of the Trustee's claim for attorney's fees, but I will defer a decision until the Trustee has had an opportunity to brief the issue.[5]

## II. THE TRUSTEE'S FACTUAL ALLEGATIONS

Before examining BRT's arguments in support of the Motion, it is helpful to examine the allegations in the Trustee's sixty-nine (69) paragraph Complaint.

After addressing this court's jurisdiction,[6] the Complaint identifies the parties and describes the Defendant as a "trucker and transporter of petroleum and petroleum related products . . . which provided goods and/or services to the Debtors." (Complaint ¶7) (emphasis added).

The Complaint then sets forth the relevant procedural history in the bankruptcy case. It

---

[5]     Although BRT requested  dismissal of all of the claims with prejudice, it did not specifically address the Trustee's claim for attorney's fees in its Memorandum of Law and the Trustee also did not refer to the attorney's fees claim in his Memorandum of Law. In Part IV.D., infra, I explain why I have singled out the attorney's fees claim for separate treatment.

[6]     This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b). The Trustee asserts that the proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(B), (E), (F), (H) and (O). If BRT disagrees with the characterization of the proceeding as core, in its answer to the Complaint, it will be obliged to so state and indicate whether it consents to the entry of a final order by the bankruptcy court. See Fed. R. Bankr. P. 7012(b).

refs to the commencement of the bankruptcy case on July 23, 2009, when the Debtor filed a

chapter 11 bankruptcy petition, the conversion of the case to chapter 7 by Order dated August 18,

2009 and the election of the Trustee as the permanent trustee on September 23, 2009.  (Id. ¶¶8-

10).  Another significant event occurred on August 4, 2010, when the court entered an order

substantively consolidating the Debtor's estate with the estate of certain non-debtor entities.  (Id.

¶13).[7]

Next, the Complaint provides some background regarding the Debtor's pre-petition

activities in a section of the Complaint labeled "Facts Common to All Counts."  The Trustee

alleges that the Debtor and certain affiliates operated approximately thirty-six (36) gas stations

and convenience stores in six (6) states in the Northeast and Mid-Atlantic region.  (Id. ¶15).  The

Debtor purchased fuel products from suppliers and sold the product to affiliated entities "within

the overall Universal 'network' as well as to certain other third parties."  (Id. ¶16).  The

Complaint alleges that the Debtors' books and records suggest that the Debtors sold fuel products

to affiliates and third parties "at cost, and in some instances, below cost" and that the Debtors

were insolvent on the Petition Date.  (Id. ¶¶19-20).

After setting out these factual allegations, the Complaint turns to the Trustee's claims.

---

[7]       The Complaint correctly states the substantive consolidation order provided that it was
nunc pro tunc to the Petition Date, but omits that Paragraph 10 of the order also provided that "[i]n
connection with any adversary proceeding, any party without notice . . . may contest the applicability of
this paragraph . . . on the basis of due process."  (Bky. No. 09-15404, Doc. # 410).

### Count I

Count I states the Trustee's claim under 11 U.S.C. §547(b)[8] and adds some factual

allegations.

The Complaint identifies certain transfers of property in the form of payment of bills or

invoices (referred to by the Trustee as "the 90-Day Transfers") that the Debtors made within

ninety (90) days of the Petition Date.  The Complaint states that the payments were on account of

"bills or invoices issued by or on behalf of [BRT] for goods and/or services provided by [BRT] to

the Debtor prior to the time" the transfer was made.  (Id. ¶¶22-23 & Ex. A).  The Complaint

alleges that the identified transfers were made while the Debtor was insolvent.  (Id. ¶26).  The

Complaint further alleges that the available assets will not be sufficient to pay unsecured creditors

in full and that the 90-Day Transfers permitted BRT to receive more than it would receive in a

---

[8]      11 U.S.C. §547(b) provides that a trustee may avoid a transfer of the debtor's interest in
property:

> (1)  to or for the benefit of a creditor;
>
> (2)  for or on account of an antecedent debt owed by the debtor before such
>       transfer was made;
>
> (3)  made while the debtor was insolvent;
>
> (4)  made—
>       (A) on or within 90 days before the date of the filing of the petition; or
>       (B) between ninety days and one year before the date of the filing of the
>           petition, if such creditor at the time of such transfer was an insider;
>           and
>
> (5)  that enables such creditor to receive more than such creditor would receive
>       if—
>       (A) the case were a case under chapter 7 of this title;
>       (B) the transfer had not been made; and
>       (C) such creditor received payment of such debt to the extent provided by
>           the provisions of this title.

chapter 7 case if the transfer had not been made and BRT received a distribution as provided in

the Bankruptcy Code.  (Id. ¶¶27-28).

## Count II

Count II states the Trustee's claim under 11 U.S.C. §548(a).[9]

The Complaint identifies certain transfers of property made on or within two (2) years

prior to the Petition Date (referred to by the Trustee as "the 2-Year Transfers").  (Id. ¶31 & Ex.

B).  While the Complaint does not specifically repeat the prior allegations regarding the transfers

---

[9]      11 U.S.C. §548(a)(1) provides that a transfer is avoidable if the debtor voluntarily or involuntarily

  (A)   made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

  (B)
    (i)   received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii)
        (I)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV)  made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

representing payments on account of invoices for goods and/or services previously provided by

BRT, it does "repeat and reassert" the prior allegations of the Complaint.  (Id. ¶30).

The Complaint also alleges, conclusorily, that the Debtors received less than equivalent

value in exchange for the 2-Year Transfers.  (Id. ¶33).  Significantly, the Complaint does not

explain whether the Debtors received nothing in exchange for the 2-Year Transfers or that goods

and/or services were provided, but were not of a reasonably equivalent value.  The Complaint

states only that:

> the Debtors failed to maintain invoices, records, or other supporting
> documents relating to Defendant which would tend to support that all of
> the 2-Year Transfers were made in the ordinary operation of the Debtors'
> businesses and in payment for the fair value of goods and/or services
> provided by the Defendant to the Debtors.

(Id. ¶34).

Finally, the Complaint alleges that BRT is the initial or immediate or mediate transferee

with respect to the 2-Year Transfers or the entity for whose benefit the transfers were made and

that the Debtors were insolvent or were rendered insolvent when the 2-Year Transfers were

made.  (Id. ¶¶35-36).

## Count III

Count III states the Trustee's claim under 11 U.S.C. §544,[10] through which the Trustee

asserts his entitlement to avoid transfers pursuant Pa. C.S.A. §§5101, et seq.[11]

---

[10]    The Complaint does not state whether the Trustee is proceeding under §544(a), which
gives the Trustee certain avoiding powers based on the rights of a hypothetical creditor and/or §544(b),
which gives the Trustee the avoiding powers of an actual creditor holding a claim allowable under 11
U.S.C. §502.

[11]    The citation is to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA").

Through Count III, the Trustee seeks to avoid transfers of property made on or within

four (4) years prior to the Petition Date (referred to by the Trustee as "the 4-Year Transfers").

(Id. ¶41 & Ex. C).  The factual basis for the claim is identical to that in Count III: the Debtors'

failure to maintain records verifying that the payments were made in the ordinary course for

goods or services of equivalent value.  (Id. ¶46).[12]


### Count IV

In Count IV states the Trustee seeks to avoid post-petition transfers pursuant to 11

U.S.C. §549.[13]

The Complaint sets out no additional factual allegations in support of Count IV.  The

Complaint states only that "to the extent" that a transfer was made "to Defendant on account of

obligations that arose before the Petition Date and that cleared after the Petition Date," or "was

not in the ordinary course of business between [BRT] and the Debtors" and not "authorized," the

transfers are "avoidable." (Id. ¶¶56-57).

---

[12]    The Complaint also states, conclusorily, that: (a) the Debtors were engaged or were
about to engage in business or transactions for which the remaining assets of the Debtors were
unreasonably small in relation to the business or transaction; (b) the Debtors intended to incur, or
believed or reasonably should have believed that they would incur, debts beyond their ability to
pay as they became due; and (c) the Debtors had unreasonably small capital relative to the sums transferred
by the 4-Year Transfers.  (Id. ¶¶48-50).


[13]    11 U.S.C. §549(a) provides that a trustee may avoid a transfer

    (1)  that occurs after the commencement of the case; and

    (2)

        (A) that is authorized only under section 303(f) or 542(c) of this title; or

        (B) that is not authorized under this title or by the court.

**Count V**

In Count V, the Trustee alleges BRT is the entity for whom the Transfer were made or is

the immediate or mediate transferee of the initial transferee.  The Trustee claims that he is entitled

to "recover the avoided Transfers or the amount of the avoided Transfers" from BRT under 11

U.S.C. §550.  (Complaint ¶62).

**Counts VI and VII**

Counts VI and VII of the Complaint include no additional factual allegations.

Count VI requests that any proofs of claim filed by BRT be disallowed pursuant to 11

U.S.C. §502(d) and (j), until such time as BRT pays the Trustee the aggregate amount of the

avoided transfers.  Count VI requests an award of attorney's fees and costs incurred in bringing

and pursuing this adversary proceeding.

**III.  LEGAL STANDARD**

Fed. R. Civ. P.  8(a)(2) requires that a complaint contain a "short and plain statement of

the claim showing the pleader is entitled to relief."[14]  Since the Supreme Court decided Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.

---

[14]     Rule 9 requires that the complaint "state with particularity the circumstances constituting
fraud or mistake."  In this proceeding, the only fraud claim asserted is for constructive fraud, not
intentional fraud.  Compare 11 U.S.C. §548(a)(1)(A) with §548(a)(1)(B).  Most courts have held that the
sufficiency of a complaint asserting a constructive fraud claim is measured by Rule 8, not Rule 9.  See,
e.g., In re Pitt Penn Holding Co., Inc., 2011 WL 4352373, at *3 (Bankr. D. Del. Sept. 16, 2011) (citing
cases, including those contra); see also Bratek v. Beyond Juice, LLC, 2005 WL 3071750, at *6 (E.D. Pa.
Nov. 14, 2005); In re Transcontinental Refrig. Lines, Inc., 438 B.R. 520, 522 (Bankr. M.D. Pa. 2010).

1937 (2009), numerous courts have issued opinions discussing the standards articulated by the

Court in assessing the sufficiency of complaints that are subject to motions to dismiss filed under

Rule 12(b)(6).  Last year, I described the legal standard as follows:

> When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which is incorporated by Fed. R. Bankr. P. 7012, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal is appropriate only if, accepting as true all facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." [Twombly, 550 U.S. at 570].   However, the factual allegations in the complaint must be more than speculative.  Phillips, 515 F.3d at 234.  While it is not necessary for the Plaintiff to provide detailed factual allegations, there must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." . . .  Iqbal, 129 S. Ct. [at 1949].
>
> In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the Court of Appeals articulated a two-part analysis to conduct when evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion.
>
> First, the factual and legal elements of the claim should be separated, such that a court must accept only the well-pleaded facts as true and may disregard any legal conclusions.  Id. at 210-11.
>
> Second, the court must determine whether the alleged facts demonstrate that the plaintiff has a "plausible" claim for relief.  Id. at 211 (citing Iqbal, 129 S. Ct. at 1950).  A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1949.  If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint is insufficient.  Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)); see also Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d. Cir. 2010).  A pleading that offers labels and conclusions or naked assertions is insufficient.  Iqbal, 129 S. Ct. at 1949.  In evaluating the sufficiency of a complaint against these standards, the court must conduct a "context-specific" evaluation drawing from its "judicial experience and common sense."  Id. at 1950.

In re Reinford, 2010 WL 4026806, at *1 (Bankr. E.D. Pa. Oct. 7, 2010) (footnote omitted).

The flashpoint in the application of the pleading standards under the Federal Rules of Civil

Procedure is found in cases in which a plaintiff lacks access to the evidentiary matter to support

the asserted claims and therefore, has difficulty pleading facts with a high degree of specificity.

As Judge Simandle observed in Ocean Petroleum, "[w]hen the evidence relevant to a claim is not

in the control of a plaintiff, there is a seeming catch-22 between the need to plead certain facts

before getting discovery, and the need to get discovery before having certain facts." Top v.

Ocean Petroleum, LLC, 2010 WL 3087385, at *4 (D. N.J. Aug. 3, 2010).  While Judge Simandle

may have been overly sanguine in stating that the proper judicial treatment of Rule 12(b)(6)

motions renders the problem "illusory," id., I fully agree with his explanation how courts can

minimize the risk that potentially meritorious complaints will be dismissed because  the plaintiff

lacks access to the relevant evidence prior to filing the complaint:

> First, courts exercise discretion that permits the pleading standards to be adapted to the circumstances at hand. When determining whether a claim is "plausible," district courts are not bound by a rigid code-pleading regime requiring a plaintiff to recite the magic words or plead every element of a claim, but instead the courts rely on "judicial experience and common sense" applied to the particular circumstances of the case at hand. Courts determine what inferences can be reasonably drawn from circumstantial facts, and also what degree, depending on the case, other factual possibilities must be ruled out in order to make legal liability plausible. Often, the very same circumstantial evidence that leads a plaintiff to believe that a defendant is in control of the relevant direct evidence forms the basis of reasonable inferences supporting a plausible claim.

> Second, a party need not have evidentiary support in order to allege a fact in the Complaint. A plaintiff may allege a fact when to the "best of the person's knowledge, information, and belief," there is reason to believe that discovery would "likely" find evidence for the fact. Fed.R.Civ.P. 11(b)(3). While something more than a mere hunch or guess is needed, the requirement is also not one necessitating evidentiary support prior to discovery.

> Thus, far from requiring that a plaintiff be in possession of the relevant evidence in order to plead a claim, a plaintiff need only have some good reasons – even if circumstantial and inferential – for believing that the defendant has engaged in some identifiable legal wrong, sufficient to convince the Court of the claim's plausibility in light of the other possible scenarios that are consistent with the facts alleged.  If this threshold of plausibility is met, the claim survives a Rule 12(b)(6) motion and discovery obligations ensue. It is only when even this somewhat low threshold has not been met that discovery is denied.

Id. (citations omitted).

## IV.  DISCUSSION

### A.  Count I

In In re Valley Media, 288 B.R. 189, 192 (Bankr. D. Del. 2003), a decision frequently

cited by other courts, the court held that a complaint to avoid preferential transfers must include

the following information in order to survive a motion to dismiss:

> (a) an identification of the nature and amount of each antecedent debt; and
>
> (b) an identification of each alleged preference transfer by
>
>> (i)   date,
>> (ii)  name of debtor/transferor,
>> (iii) name of transferee and
>> (iv)  the amount of the transfer.

See generally In re Caremerica, Inc., 409 B.R. 737, 749 (Bankr. E.D.N.C. 2009) (discussing

Valley Media standards and citing other decisions that "require something less").

BRT asserts that Count I of the Complaint is inadequate for two (2) reasons.  First, it

argues that the Complaint failed to provide adequate detail with respect to the antecedent debt

requirement because "it fails to provide any details to show that there was . . . an antecedent

debt." (BRT Mem. of Law at 5-6).  Second, it argues that the Complaint fails to allege that the

90-Day Transfers were made to or for the benefit of BRT.  (Id. at 6).  Thus, BRT contends that

the Complaint fails to allege sufficient facts to state a plausible claim with respect to two (2)

elements of the preference claim: those set forth in 11 U.S.C. §547(b)(1) and (2).  Respectfully, I

disagree.

In its objection to the sufficiency of the Complaint, BRT loses sight of the fact that,

notwithstanding Twombly and Iqbal, "the basic tenets of Rule 12(b)(6) have remained static. . . .

The general rules of pleading still require only a short, plain statement of the claim showing that

the pleader is entitled to relief, not detailed factual allegations." U.S. v. Rocky Mountain

Holdings, Inc., 2009 WL 564437, at *2 (E.D. Pa. Mar. 4, 2009) (citing Phillips, 515 F.3d at 231

and Spence v. Brownsville Area School Dist., 2008 WL 2779079, at *2 (W.D. Pa. July 15,

2008)); see also Hammett v. AllianceOne Receivables Mgt., Inc., 2011 WL 3819848, at *2 (E.D.

Pa. Aug. 30, 2011).  The Complaint is a pleading and, as such, is not subjected to "a level of

scrutiny . . . befitting of a motion for summary judgment." Rocky Mountain Holdings, 2009 WL

564437, at *8.  The Complaint here satisfies the minimal requirements of Rule 8.

Paragraphs 6-7, 16 and 23-24 of the Complaint address all of the elements of a claim

under §547(b), as identified in Valley Media.  The Complaint describes the Debtor as a business

entity that purchased fuel products from suppliers and BRT as a seller of such products (and

related services).  It identifies the dates and amounts of the transfers that the Trustee seeks to

avoid and expressly alleges that the transfers were for BRT's benefit.  These facts are sufficiently

detailed to make out a plausible claim that the Debtor owed BRT a debt for goods provided and

that the Debtor made payments to BRT within the ninety (90) day preference period on account

of an antecedent debt.[15]  No further detail is necessary to meet the pleading requirements related

to 11 U.S.C. §547(b)(1) and (2).[16]

---

[15]     I agree with the Trustee's position that although Paragraph 7 of the Complaint does not explicitly so state, when read together with Paragraphs 23-25, it is reasonable to infer that the Trustee is alleging that BRT provided goods or services to the Debtors "on credit," thereby creating an antecedent debt.

[16]     BRT raises no objection to the factual allegations regarding the elements of a preference claim required by 11 U.S.C. §547(b)(3)-(5).

## B. Counts II and III

In Count II, the Complaint cites 11 U.S.C. §548 generally, without differentiating between

subsections (a)(1)(A), for actual (i.e., intentional) fraud, and (a)(2)(B), for constructive fraud.

Similarly, in Count III, the Trustee neglects to distinguish between actual fraud and constructive

fraud for his claims under 11 U.S.C. §544 and PUFTA.

BRT reads the Complaint (as I do) to assert two (2) claims for constructively fraudulent

transfers and to assert no claims for actual or intentional fraud.[17]  BRT asserts that the Complaint

is inadequate because it fails to plead any facts which would support an inference that the Debtor

did not receive "reasonably equivalent value." (BRT Mem. at 9).[18]  I agree.

In Paragraphs 33 and 45, the Trustee alleges, conclusorily, that the Debtors did not

receive reasonably equivalent value in return for the 2-Year Transfers and the 4-Year Transfers,

---

[17]      The constructive fraud provision of PUFTA, 12 Pa. C.S. 5104(a)(2), provides that a
transfer is fraudulent as to present and future creditors if the debtor made the transfer

> (2) without receiving a reasonably equivalent value in exchange for the transfer or
> obligation, and the debtor:
>
> > (I)  was engaged or was about to engage in a business or a transaction for
> > which the remaining assets of the debtor were unreasonably small in
> > relation to the business or transaction; or
> >
> > (ii) intended to incur, or believed or reasonably should have believed that
> > the debtor would incur, debts beyond the debtor's ability to pay as
> > they became due.

[18]      BRT also contends that the Trustee: (1) fails to allege that the transfers were transfers of
the Debtors' property; and (2) makes only a conclusory allegation regarding insolvency. (BRT's Mem. at
9).  Neither of these arguments are convincing.  Paragraphs 31 and 41 expressly allege that the transfers
detailed in Exhibits B and C were made by the Debtors.  Paragraph 20 states that the Trustee reviewed the
Debtor's financial records and that the records suggest that the value of the Debtors' assets was less than
their liabilities between December 31, 2004 through the Petition Date.  I am satisfied that the Complaint
does more than simply parrot the statutory language and states facts that make the fraudulent transfer
claims (at least as these elements) sufficiently plausible to withstand a motion to dismiss.

respectively.  Standing alone, these allegations merely parrot the relevant statutory provision and do not provide a factual foundation that would permit a court to conclude that the Complaint states a plausible claim for relief.

The only further factual allegation in the Complaint with respect to the Debtors' failure to receive "reasonably equivalent value" is the following statement in Paragraph 34 regarding the 2-Year Transfers (the substance of which is repeated in Paragraph 46 with respect to the 4-Year Transfers):

> [T]he Debtors failed to maintain invoices, records, or other supporting documents relating to Defendant which would tend to support that all of the 2-Year Transfers were made in the ordinary operation of the Debtors' businesses and in payment for the fair value of goods and/or services provided by the Defendant to the Debtors.

(Complaint ¶34).

In the circumstances here (and making the "context-specific" judgment contemplated by Iqbal), the allegation that the Trustee cannot locate business records memorializing the Debtors' transactions with BRT does not create a plausible inference that the goods or services received by the Debtor in return for the payments made were not of reasonably equivalent value.  The Trustee's allegation strikes me as a non-sequitur when offered to support an avoidance claim based on alleged constructive fraud.

In some circumstances, the absence of documentation for a transaction that is typically documented in common commercial practice could contribute to a plausible inference that the transaction was tainted by actual fraud.  See 12 Pa. C.S. 5104(b)(3) (concealment of the transfer).  Here, however, there is nothing alleged in the Complaint that even hints that the Debtors received no consideration (or purposefully received less than reasonably equivalent value) in return for the transfers at issue.  The Trustee does not allege that the transfers were the product of actual fraud.

-15-

Nor does he aver that the Debtors received nothing in return or intentionally overpaid BRT.   The

Trustee alleges only that he has no record of the transactions which led to the transfers at issue.

The only reasonable inference to be drawn from the Complaint is that the Trustee

maintains that the Debtors did receive receive products and/or services in return for the payments

at issue.  I fail to perceive how the Trustee's allegation that there is no record of the transactions

bears any logical relationship to the value of the goods and services BRT provided to the Debtors

or creates any inference that the payments exceeded the value of the goods and services the

Trustee implicitly concedes the Debtors received.

Further, a fair reading of the Complaint creates the opposite inference to that urged by the

Trustee on the question of reasonably equivalent value.  The thrust of the Complaint is that the

Debtors were engaged in real business activities, that they purchased real products and services

from their suppliers (including BRT) and that the transfers at issue were payments for the goods

and services received.  Indeed, based on the factual allegations, the more plausible inference is

that the transactions were bona fide commercial transactions in which the Debtors received

reasonably equivalent value.  Against this factual landscape – where the Trustee has not alleged

that the transfers were made as part of a set of "phantom" transactions – the Complaint needs to

provide some factual basis to support the claim that the Debtors overpaid BRT for the goods and

services they purchased.  Without additional facts, the Trustee's claim lacks sufficient plausibility

and does not warrant imposing upon BRT the burden of mounting a defense.[19]  See, e.g., Ocean

---

[19]    I appreciate that a party can plead in the alternative and that the Trustee's allegation that
BRT provided goods and/or services to the Debtors was made in support of the preference claim (and, in
particular, the "antecedent debt" element of that claim).  However, in Counts II and III, the Trustee
incorporated by reference the prior allegations regarding the Debtors' vendee-vendor business relationship
with BRT.  Even if those allegations had not been incorporated in the later counts of the Complaint, the
(continued...)

Petroleum, LLC, 2010 WL 3087385, at *3 ("A Rule 12(b)(6) motion essentially represents a

checkpoint that must be cleared before a plaintiff can reach the discovery stage of litigation.").

In short, Counts II and III of the Complaint founder on the absence of a factual basis to

infer that the transfers at issue were made without receiving "reasonably equivalent value," an

essential element of the Trustee's fraudulent transfer claims. Consequently Counts II and III will

be dismissed.[20]

---

[19](...continued)
mere fact that the Trustee cannot locate (or the Debtors failed to maintain) the invoices for the transactions, without more, does not create a plausible inference that the goods or services received were not reasonably equivalent in value to the payments the Debtors made, for the reasons stated in the text.

[20]       BRT also speculates that the Trustee may be claiming that the transfers were constructively fraudulent under a "wrong payor" theory. This theory posits that the Debtor-entity that paid BRT was not the entity that received the goods and services provided and therefore, that the transfers were constructively fraudulent as to the Debtor-entity that made the payment. BRT then argues that even if the Trustee is invoking that theory and assuming arguendo that the Trustee has alleged sufficient facts to support it (which BRT disputes), according to BRT, the claim fails as matter of law due to the substantive consolidation of the estates of the Debtor with its affiliated entities. (BRT Mem. at 11-12). See, e.g., In re Parkway Calabasas, Ltd., 89 B.R. 832, 839 (Bankr. C.D. Cal. 1988) (substantive consolidation eliminated fraudulent transfer claim because merger of two estates "leav[es] no party unjustly enriched and no creditors looking to an impoverished asset pool for payment"), aff'd, 949 F.2d 1058 (9th Cir.1991).

In response, the Trustee agrees that substantive consolidation can defeat a fraudulent transfer claim based on a "wrong payor" theory, but asserts that the defense is inapplicable here because the Debtors may have made payments for goods and services that BRT provided to entities that have not been substantively consolidated with the bankruptcy estate. (Of course, the Trustee concedes that he is unsure of this because he lacks the records relating to the transactions that, presumably, would reveal which entities received the goods and services).

I will not address this issue at this time because a constructive fraudulent transfer claim based on a "wrongful payor" theory is not before the court. The Complaint cannot be read to allege the Debtors made payments on account of goods and services provided to non-consolidated affiliated entities.

As stated in Part IV.E., infra, I am granting the Trustee leave to file an amended complaint. If the Trustee wishes and is able to plead facts that support this theory of recovery, he can do so in his amended complaint.

## C.  Count IV

No extended discussion is required to explain why Count IV must be dismissed.  As stated earlier, the Complaint does not identify a single transaction that may be subject to avoidance under 11 U.S.C. §549(a) as a post-petition transaction.  The Trustee contends that "[t]he state of the Debtors' records affords the Trustee a good faith basis for asserting this claim."  (Trustee's Mem. at 11).

The poor state of the Debtors' records may provide the Debtor with a good faith basis to suspect that the bankruptcy estate has a claim, but Rule 8, as construed in Twombly and Iqbal requires more.  The plaintiff must provide some factual basis supporting the asserted claim.  A complaint cannot withstand a motion to dismiss based on the "mere possibility" that the plaintiff may have a claim.  Iqbal, 129 S. Ct. at 1950.  Because that is all that has been alleged here, Count IV must be dismissed.  Accord In re Rood, 426 B.R. 538, 555 (D. Md. 2010).

## D.  Counts V, VI and VII

BRT characterizes Count V (11 U.S.C. §550), Count VI (11 U.S.C. §502(d), (j)) and Count VII (Attorney's Fees) as "derivative" of Counts I through IV.  As such, BRT asserts that because the first four (4) counts must be dismissed because they fail to state a claim, so too must Counts V through VII.  (BRT Mem. at 14).

If Counts I through IV all had been dismissed, Counts V through VII would fail as well. See In re Crucible Mat'ls Corp., 2011 WL 2669113, at *4 (Bankr. D. Del. July 6, 2011); In re USDigital, Inc., 443 B.R. 22, 40 & 49 (Bankr. D. Del. 2011).  However, Count I has survived the motion to dismiss.  Therefore, the motion will be denied as to Counts V through VII.

Count VII requires some further consideration, however.

In Goldstein v. Petroleum Products Corp., Adv. No. 11-652, another pending adversary

proceeding in this bankruptcy case, the defendant filed a motion to dismiss the complaint,

asserting, inter alia, that irrespective whether the Trustee's claim for attorney's fees is "derivative"

of the transfer avoidance counts, the claim is, in any event, simply without legal foundation.  In

requesting dismissal of the Trustee's claim for attorney's fees, the Petroleum Products defendant

asserted that the "American Rule"[21] applies to fraudulent transfer actions under the Bankruptcy

Code and PUFTA, and cited legal authority in support of its position.[22]  In response, the Trustee

withdrew the claim for attorney's fees stated in the Petroleum Products adversary proceeding.   A

this time, I have not had occasion to rule on the issue in either the Petroleum Products adversary

proceeding or any of the other pending adversary proceedings in this bankruptcy case.

In the instant adversary proceeding, the BRT argued only that the claim for attorney's fees

should be dismissed as derivative of the other, inadequately pleaded claims.  BRT did not assert

that the claim was legally insufficient on any other ground.  Because the "American Rule" theory

was not raised, I will not address it at this time.  However, in the interest of achieving some

uniformity among the numerous, similar adversary proceedings filed by the Trustee, I will

consider the legal sufficiency of the Trustee's claim for attorney's fees, sua sponte, after providing

the Trustee with the opportunity to submit a memorandum of law setting forth authority for the

---

[21]    See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975) (in absence of a statutory fee-shifting provision, courts follow "the American Rule," pursuant to which each party bears its own legal expenses in litigation).

[22]    The defendant cited In re LCO Enterprises, Inc., 180 B.R. 567, 570 (B.A.P. 9th Cir. 1995), aff'd, 105 F.3d 665 (9th Cir. 1997); In re Aero-Fastener, Inc., 177 B.R. 120, 141 (Bankr. D. Mass. 1994); In re Empresa Naviera Santa USA, Inc., 235 B.R. 130, 133 (Bankr. S.D. Fla. 1999); Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999); Becker v. Borough of Schuylkill Haven, 189 A.2d 764, 767 (Pa. Super. Ct. 1963).

claim. See, e.g., Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976) (court

may raise issue of deficiency of complaint under Rule 12(b)(6) sua sponte, but only if plaintiff is

accorded opportunity to respond).


**E.**

BRT requests that the dismissal of the Trustee's claims be "with prejudice." However, I

cannot rule out the possibility that the Trustee will be able to plead additional facts to cure the

shortcomings in the Complaint. Therefore, I will give the Trustee a brief period of time in which

to file an amended complaint. See, e.g., Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)

("[w]e have held that even when a plaintiff does not seek leave to amend, if a complaint is

vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an

amendment would be inequitable or futile").


**V.  CONCLUSION**

In this Memorandum, after employing the principles articulated in Twombly and Iqbal, as

elaborated in Ocean Petroleum,  I have concluded that certain claims have been pleaded

adequately, while other claims must be dismissed. For these reasons, BRT's Motion to Dismiss

will be granted in part and denied in part. An appropriate order will be entered.


Date:   **October 27, 2011**                   _____

                                **ERIC L. FRANK**
                                **U.S. BANKRUPTCY JUDGE**